1  **WO**

2

3

4

5

6        **IN THE UNITED STATES DISTRICT COURT**

7           **FOR THE DISTRICT OF ARIZONA**

8

9   Thomas John Metros,                              No. CV-16-04423-PHX-DLR

10            Plaintiff,                             **ORDER**

11  v.

12  Commissioner of Social Security
    Administration,
13
              Defendant.
14

15

16        Plaintiff Thomas Metros applied for a period of disability, disability insurance

17  benefits, and supplemental security income ("SSI") in September 2012, alleging that he

18  became disabled in October 2008.  After state agency denials, Metros appeared and

19  testified at a hearing before an Administrative Law Judge ("ALJ").  A vocational expert

20  also testified.  It was determined that an additional hearing was necessary for a full and

21  fair presentation of the case.  Metros appeared and testified at this second hearing, along

22  with a different vocational expert.  At the hearing, Metros amended his disability onset

23  date to September 26, 2012, and voluntarily withdrew his application for a period of

24  disability and disability insurance benefits, leaving only his application for SSI.

25        On November 30, 2015, the ALJ issued a decision finding Metros not disabled

26  within the meaning of the Social Security Act ("SSA").  This decision became Defendant

27  the Commissioner of the Social Security Administration's ("Commissioner") final

28  decision when the Appeals Council denied review.  Metros now challenges the

1    Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court reverses the

2    Commissioner's decision and remands for an award of benefits.

3    **I. Overview of the Administrative Process**

4          To determine whether a claimant is disabled, the ALJ follows a five-step process.

5    20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps,

6    but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094,

7    1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is

8    engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the

9    claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether

10   the claimant has a "severe" medically determinable physical or mental impairment.

11   § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step

12   three, the ALJ considers whether the claimant's impairment or combination of

13   impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

14   of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to

15   be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the

16   claimant's residual functional capacity ("RFC") and determines whether the claimant is

17   still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant

18   is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step,

19   where she determines whether the claimant can perform any other work based on the

20   claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the

21   claimant is not disabled. If not, the claimant is disabled.

22   **II. The ALJ's Decision**

23         At step one, the ALJ determined that Metros meets the insured status requirements

24   of the SSA through December 31, 2008, and has not engaged in substantial gainful

25   activity since his alleged disability onset date. (A.R. 32.) The ALJ found at step two that

26   Metros' obesity, degenerative disc disease of the lumbar and cervical spine, and status

27   post total bilateral knee replacement are severe impairments, but concluded at step three

28   that they do not meet or medically equal the severity of an impairment listed in Appendix

1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 32-34.) At step four, the ALJ assessed

Metros' RFC as follows:

> The claimant is able to lift and carry up to ten pounds frequently and up to 20 pounds occasionally. The claimant can sit up to one hour at a time and up to six hours per workday. The claimant can stand up to two hours, and walk up to two hours, per eight-hour workday. The claimant requires a cane to ambulate. The cane is medically necessary. When using a cane, the claimant can use his free hand to carry small objects. The claimant can occasionally reach overhead bilaterally. The claimant can reach in all other directions with either hand continuously (more than two-thirds of the day). The claimant can handle, finger, feel push, and pull continuously with both arms. The claimant can frequently use each of his feet for operation of foot controls. The claimant can never climb ladders, ropes, scaffolds, ramps, or stairs. The claimant can occasionally balance, stoop, and crouch. The claimant can never kneel or crawl. The claimant must never be exposed to unprotected heights, or dust, odors, fumes, or pulmonary irritants. The claimant can occasionally be exposed to extreme heat and extreme cold. The claimant can frequently be exposed to vibration. The claimant can continuously be exposed to moving or mechanical parts. The claimant is limited to working in environments with no more than loud noise levels, equivalent to the sound of heavy traffic. The claimant can perform acts such as shopping. The claimant can travel without a companion. The claimant can ambulate without the assistance of a wheelchair, walker, or two canes or two crutches. The claimant can walk one block at a reasonable pace on rough or uneven surfaces. The claimant can climb a few steps at a reasonable pace with the use of one handrail. The claimant can prepare simple meals and feed himself. The claimant can sort, handle, and use paper files. As for mental limitations, the ability to understand, remember, and carryout instructions is not affected and the ability to interact appropriately with supervisors, coworkers and the public, as well as the ability to respond to changes in the routine work setting is not affected by the impairment.

(*Id.* at 34-35.) Based on this RFC, the ALJ found that Metros can perform his past

relevant work as a mortgage loan officer and, therefore, concluded that he is not disabled

within the meaning of the SSA. (*Id.* at 38-39.)

**III. Standard of Review**

On appeal, the district court does not review the ALJ's decision de novo or

otherwise determine whether the claimant is disabled. Rather, the court reviews only

those issues raised by the party challenging the ALJ's decision and may reverse only if

the decision is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Orn*, 495 F.3d at 630. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citation omitted). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

**IV. Discussion**

Metros argues that the ALJ improperly rejected the sitting limitations assessed by consultative examiner Dr. Keith Cunningham and improperly evaluated Metros' pain and symptom testimony. (Doc. 15 at 3.) The Court reaches only the first issue because its resolution is dispositive.

Dr. Cunningham administered a consultative examination in June 2015. (A.R. 1195-1206.) He opined that Metros could lift up to twenty pounds occasionally, up to ten pounds frequently, could sit for up to four hours, stand for up to two hours, and walk up to two hours per workday. (*Id.* at 1199-1200.) Though Dr. Cunningham indicated that Metros needed to use a cane, he opined that Metros still could use his free hand to carry small objects. (*Id.* at 1200.) He also assessed postural, manipulative, feet usage, and environmental limitations. (*Id.* at 1201-04.) Dr. Cunningham based his opinion on his own examination of Metros, which revealed significant gait, station, and range of motion deficiencies. (*Id.* at 1195-96.)

The ALJ found that "Dr. Cunningham's opinion is largely consistent with the medical evidence," assigned it "great weight," and adopted "the majority of the limitations assigned." (*Id.* at 37.) The lone exception was Dr. Cunningham's opinion

that Metros could sit for up to four hours in a workday, which the ALJ found to be inconsistent with Metros' level of daily activity and the conservative medication he used to treat his pain. (*Id.*) Instead, the ALJ found that Metros could sit for up to six hours in a workday. (*Id.* at 35.)

As Metros acknowledges, an ALJ may discount an examining physician's opinion (or, in this case, a portion thereof) "by providing specific and legitimate reasons that are supported by substantial evidence."[1] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation and citation omitted). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Although the ALJ's stated reasons for not adopting Dr. Cunningham's full opinion can be specific and legitimate, *see* 20 C.F.R. § 404.1527(c)(4); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), the ALJ did not satisfy this standard because he did not explain how Metros' daily activities or his conservative pain medication regiment show that he can sit for more than four hours in a workday.

With respect to Metros' daily activities, the ALJ relied on the following summary of those activities contained within the psychological report of Dr. Michael Rabara:

> Upon arising, [Metros] first tends to his personal hygiene. He bathes in the afternoons. He needs no assistance with personal hygiene, grooming and dressing. He skips breakfast. In the mornings he will "drink coffee and read the news. I go[] outside and sit with the birds." He eats lunch. During the afternoons, [Metros] does "the same thing." For dinner,

---

[1] More specifically, the "specific and legitimate reasons" standard applies to examining physician opinions that are contradicted by another doctor's opinion. *Garrison*, 759 F.3d at 1012. Dr. Cunningham's opinion regarding Metros' sitting limitations is contradicted by the opinions of treating physician Dr. Ayaz Biviji, who opined that Metros could sit for up to five hours in a workday, and state agency reviewer Dr. B. Vaghaiwalla, who opined that Metros could sit for up to six hours per work day. (A.R. 37-38.) In the Ninth Circuit, rejection of an un-contradicted treating or examining physician's opinion must be justified by clear and convincing reasons supported by substantial evidence. *See Lester v. Colvin*, 81 F.3d 821, 830-31 (9th Cir. 1995). Though the "clear and convincing" reasons standard ostensibly is more demanding, this Court has on prior occasions questioned whether "the line between specific and clear or between legitimate and convincing is more abstract than practical," especially when the same quantum of evidence is required under both standards. *Moore v. Comm'r of Soc. Sec. Admin.*, No. CV-16-03445-PHX-DLR, 2017 WL 6379920, at *4-5 (D. Ariz. Dec. 14, 2017).

- 5 -

he usually eats a self-prepared meal. In the evening he will "do the same routine."

[Metros] sometimes picks up his room and makes his bed. He does not [do] his own laundry. He prepares his own meals. He tries to keep a neat and clean household. He is able to initiate phone calls and does so rarely. [Metros] leaves the house 1-2 times per week. He is able to drive a car. He is not able to shop at nearby stores within walking distance. He does not attend church regularly. He cares for a cat. He does not maintain a yard or garden.

(A.R. 36, 1209.) The Commissioner argues that these "activities do not suggest a significant amount of walking," and it therefore "was reasonable for the ALJ to infer . . . that [Metros] sits for more than four hours per day." (Doc. 16 at 15.) The Court disagrees. Though Metros admittedly sits during the day, the cited records do not elucidate the frequency or duration in which he does so. Moreover, it is not reasonable to assume that Metros is sitting whenever he is not walking. Indeed, Metros testified that he lies down to alleviate pain five times per day for one-half hour each time. (A.R. 36, 81, 122-23.)

As for Metros' pain medication regiment, the ALJ noted that Metros takes tramadol, Tylenol, and ibuprofen for pain, but does not take prescribed narcotic medications out of preference. (*Id.* at 36.) The ALJ reasoned that Metros' "election to forego narcotic medications reasonably leads to the conclusion that [his] symptoms are adequately alleviated by the conservative medications he currently takes." (A.R. 36.) But, as both Metros and the Commissioner acknowledge in their briefs, tramadol is an opioid/narcotic used to treat moderate to moderately severe pain. (Docs. 15 at 13; 16 at 17.) The ALJ did not explain how taking medication to alleviate moderate to moderately severe pain is inconsistent with Dr. Cunningham's assessed sitting limitations. Furthermore, the evidence indicates that Metros chose not to take stronger narcotic medications because of the adverse side effects and his past issues with addiction. (A.R. 517, 603, 970, 1131-32.) It therefore was not reasonable for the ALJ to infer from Metros' decision to take tramadol instead of a stronger narcotic that he could sit for a longer period that Dr. Cunningham opined.

1    In her response brief, the Commissioner raises a number of post hoc

2  rationalizations for the ALJ's decision to reject the sitting limitations assessed by Dr.

3  Cunningham.  The Court does not consider these arguments because, as previously noted,

4  it cannot "affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630.

5  **V.  Scope of Remand**

6    When the Commissioner's decision is tainted by legal error or not supported by

7  substantial evidence, the Court has discretion to reverse and remand either for further

8  proceedings or for an award of benefits.  42 U.S.C. § 405(g).  With that said, "[a]n

9  automatic award of benefits in a disability case is a rare and prophylactic exception to the

10  well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir.

11  2017).  In deciding whether to remand for an award of benefits, the Court considers the

12  following three factors: (1) did the ALJ fail to provide legally sufficient reasons for

13  rejecting evidence, (2) has the record has been fully developed and would further

14  proceedings serve no useful purpose, and (3) is it clear from the record that the ALJ

15  would be required to find the claimant disabled were such evidence credited? *Triechler*

16  *v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014).   The Court need not

17  apply this so-called "credit-as-true" rule if evaluation of the record as a whole creates

18  serious doubt that the claimant is, in fact, disabled. *See Garrison*, 759 F.3d at 1021.

19    Here, the ALJ did not provide legally sufficient reasons for rejecting the sitting

20  limitations assessed by Dr. Cunningham.   The Commissioner argues that further

21  proceedings are necessary so the ALJ can consider whether the Commissioner's post hoc

22  rationalizations offer a basis for rejecting Dr. Cunningham's opinion.  (Doc. 16 at 19.)

23  But Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the

24  argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies

25  as a remand for a 'useful purpose.'"[2] *Garrison*, 759 F.3d at 1021-22 (collecting cases).

26

27  ───────────────

   [2] The Commissioner also argues that a remand for further proceedings is
   appropriate because there are conflicts in the medical evidence. (Doc. 16 at 19.)  But the
28  ALJ already considered these conflicts and, in almost all respects, found Dr.
   Cunningham's opinions about Metros' physical limitations to be the most credible out of
   all those submitted.

- 7 -

1  Lastly, the vocational expert opined that someone with the limitations assessed by Dr.

2  Cunningham could not perform past relevant work and could not transfer to other work.

3  (A.R. 114-17.)  It is clear, then, that had the ALJ adopted Dr. Cunningham's opinion in

4  full, he would have found Metros to be disabled.

5  **VI. Conclusion**

6       For the most part, the ALJ issued a thorough, clear, and well-reasoned decision.

7  The ALJ did not, however, supply legally adequate reasons for rejecting the sitting

8  limitations assessed by Dr. Cunningham.  Had Dr. Cunningham's opinion been accepted

9  in full, the ALJ would have found Metros disabled.  Therefore,

10       **IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this

11  matter **REMANDED** for an award of benefits.  The Clerk of the Court shall terminate

12  this case.

13       Dated this 22nd day of March, 2018.

14

15

16

17  _____

18  Douglas L. Rayes
    United States District Judge

19

20

21

22

23

24

25

26

27

28